UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRUCE ALLISON,

      Petitioner,

v.                                       Case No. 8:05-cv-1356-T-27TGW

WALTER A. MCNEIL[1],

      Respondent.
_____/

## ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his convictions for aggravated battery, sexual battery and sexual battery with a deadly weapon (Dkt. #1). The Respondent argues that Petitioner's claims fail to meet the threshold requirements of 28 U.S.C. § 2254(d) and (e).

Petitioner was convicted and sentenced to life imprisonment. The state courts affirmed Petitioner's convictions and sentences on direct appeal and denied Petitioner's subsequent state Rule 3.850. Petitioner's Section 2254 petition followed.

### Evidentiary Hearing

To be entitled to an evidentiary hearing on habeas claims, the Petitioner must "allege[] facts that, if proved at the hearing, would entitle petitioner to relief." *Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted). For reasons discussed below, an evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a). *See Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (addressing the petitioner's claim that his requests for

---

[1] Walter A. McNeil, Secretary of the Florida Department of Corrections, is substituted as the party respondent. Fed. R. Civ. P. 25(d).

an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his

trial in both the state and federal courts were improperly denied, the court held that an evidentiary

hearing should be denied "if such a hearing would not assist in the resolution of his claim.").

## Standard of Review

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.

*Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840

(2000). Section 2254(d), which creates a highly deferential standard for federal court review of state

court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied--the state-court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal Law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States." Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a

conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Petitioner has the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection of Petitioner's claims.

**Ground One**

Petitioner claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),
> the Supreme Court set forth a two-part test for analyzing ineffective assistance of
> counsel claims.   According to *Strickland*, first, the defendant must show that
> counsel's performance was deficient. This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel" guaranteed the defendant
> by the Sixth Amendment.   Second, the defendant must show that the deficient
> performance prejudiced the defense.   This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair trial, a trial whose result is
> reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690-91. Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

In Ground One, Petitioner alleges that his trial counsel rendered ineffective assistance by advising Petitioner to not testify because Petitioner had a prior burglary conviction. Petitioner presented this claim to the state court in his Rule 3.850 motion. Following an evidentiary hearing,

the state court denied relief[2] and the state appellate court affirmed[3] (Dkt. #12, Exs. 15, 22).  To obtain relief on this ground, Petitioner must establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his Rule 3.850 motion.

At trial, during a colloquy conducted by the state judge, Petitioner testified that he did not wish to testify:

(THE DEFENDANT WAS DULY SWORN.)

| | |
|---|---|
| Court: | Mr. Allison, you can have a seat if you'd like.  You are Bruce M. Allison; is that right? |
| Defendant: | Yes, sir. |
| Court: | You are the defendant in this case; is that correct? |
| Defendant: | Yes, sir. |
| Court: | All right.  Now, [defense counsel] has indicated that you and he have discussed whether you should testify in this case or not, and you have elected not to do that; is that correct? |
| Defendant: | Yes, sir. |

---

[2] The state court's order denying relief on this claim following the evidentiary hearing states:

This cause having come before the Court on the Defendant's *Motion for Post-Conviction Relief* in the above-styled cases and the Court having been fully advised in the premises, pursuant to Florida Rule of Criminal Procedure 3.850, it is hereby

ORDERED AND ADJUDGED that the defendant's motion is DENIED.

(Dkt. #12, Ex. 15).

[3] The state appellate court affirmed the denial of this claim in a *per curiam* decision without written opinion (Dkt. #12, Ex. 22).

| | |
|---|---|
| Court: | Now, I want to know if this is something that you have voluntarily agreed to do based on your discussions with [defense counsel]. I do not want you to tell me what you and he talked about because that's privileged conversation, I just want to make sure that you have discussed this with [defense counsel]. Is that right? |
| Defendant: | Yes, sir. |
| Court: | And neither [defense counsel] or anyone else has told you that you just could not testify even if you wanted to; is that correct? |
| Defendant: | That's correct. |
| Court: | So you have decided not to testify because you have made that decision after discussing the various options with [defense counsel]; is that correct? |
| Defendant: | Yes, sir. |
| Court: | And you're not claiming that [defense counsel] has told you that you could not testify even if you want to? |
| Defendant: | No, no, sir. |
| Court: | And you understand, of course, you'll be given - - the jury will be given the appropriate jury instruction regarding the fact that they cannot - - well, I'll tell you what it says so there won't be any misunderstanding, find it here. The jury will be instructed that the Constitution requires the State to prove its accusations against the defendant. It is not necessary for the defendant to disprove anything. Nor is the defendant required to prove his |

innocence.  It is up to the State to prove the defendant's guilt by evidence.

The defendant exercised a fundamental right by choosing not to be a witness in this case.  You must not view this as an admission of guilt or be influenced in any way by his decision.  No juror should ever be concerned that the defendant did or did not take the witness stand to give testimony in the case.

That instruction will be given to the jury.  Do you understand that?

Defendant:      Yes, sir.

Court:          All right.  At this point I think that is all that needs to be established, unless there's something else.

(Dkt. #12, Ex. 25, Vol. 4, pp. 363-65).

Both Petitioner and his trial counsel testified at the state court evidentiary hearing regarding this claim.  At the conclusion of the hearing, the state judge made the following findings:

Okay.  With regard to the defendant testifying, I believe that he was fully advised of his right to testify and I don't believe [defense counsel] as a matter of fact ever said to him that your - - the nature of your convictions would come out.  He probably told him if you deny that you're a burglar, if you say, I'm not a burglar or something like that, then those convictions could come out, or if he denied having any convictions, then they would be admissible.  And those are saying something wrong.  That's what he's probably referring to.  But he was fully advised and made an informed decision not to testify.

. . .

Does he testify and get his prior convictions in front of the jury, as well as getting the story in front of the jury?  Or does he save himself from having prior convictions by not testifying?

Judge Dakan conducted a colloquy. There was never anything else raised and I believe that [defense counsel]'s performance was not deficient[4] in any way and I deny the application for post conviction relief.

(Dkt. #12, Ex. 14, pp. 435-36 ).[5]

A criminal defendant has a fundamental constitutional right to testify on his own behalf at trial. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992). *See also Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999). "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." *United States v. Teague*, 953 F.2d at 1534. To prevail on an ineffective assistance claim alleging that counsel prevented a petitioner from testifying, the petitioner must produce more than a bare, unsubstantiated allegation to satisfy *Strickland's* requirements. *See Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) ("[I]n a subsequent collateral attack on the conviction [alleging ineffective assistance for counseling the defendant to not testify], the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.").

---

[4] Although the state trial court failed to cite *Strickland* as the standard for ineffective assistance, no explicit citation is required. A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003). In Florida, *Strickland* governs ineffective assistance of counsel claims. *Walls v. State*, 926 So.2d 1156 (Fla. 2006).

[5] The page numbers cited in Respondent's Exhibit 14 are the numbers located at the bottom right-hand corner of each page.

Petitioner presents no allegations that counsel failed to advise Petitioner that he had a right to testify or that the decision of whether Petitioner would testify rested ultimately with Petitioner. The record shows that Petitioner discussed with trial counsel whether Petitioner should testify and that the jury could potentially learn of Petitioner's prior convictions if he testified[6] (Dkt. #12, Ex. 14, pp. 7, 9-12). The trial judge conducted an appropriate colloquy with Petitioner during the trial concerning Petitioner's decision to not testify. Petitioner admitted that he "wasn't forced into anything" ((Dkt. #12, Ex. 14, pp. 13-14). The trial judge apprised Petitioner of his absolute right to testify and that the decision whether to testify rested solely with Petitioner (Dkt. #12, Ex. 25, Vol. 4, pp. 363-65).

Petitioner fails to rebut the state court's factual finding that he was fully advised of his right to testify. Further, Petitioner fails to demonstrate that his attorney failed to advise Petitioner of his right to testify or that his attorney interfered with or deprived Petitioner of the ability to knowingly decide whether to testify. Moreover, Petitioner fails to show that absent counsel's alleged error, Petitioner would have taken the stand and the jury would have acquitted him. Petitioner fails to meet either *Strickland*'s deficient performance or prejudice requirement to support a claim of ineffective assistance. *See Strickland v. Washington*, 466 U.S. at 691-92. Absent a demonstration of prejudice, Petitioner cannot prevail on this claim of ineffective assistance of counsel. *See Heath v. Jones*, 941 F.3d at 1130; *Chandler v. United States*, 218 F.3d at 1312-14. Consequently, Petitioner fails to meet his burden of proving that the state court's denial of this claim of ineffective assistance was an

---

[6] Florida law provides that, if a criminal defendant testifies on his own behalf, the State may inquire if the defendant had a prior conviction for a crime punishable by a term of imprisonment of more than one year or a crime involving dishonesty or false statement. Fla. Stat. §§ 90.608, 90.610.

unreasonable application of controlling Supreme Court precedent or an unreasonable determination

of the facts. *See* 28 U.S.C. § 2254(d)(1), (2).

## Ground Two

Petitioner alleges that his trial counsel rendered ineffective assistance by "failing to argue for

acquittal due to insufficient evidence." Petitioner contends that trial counsel failed to preserve an

insufficiency of evidence claim for appeal. The state court rejected this claim in Petitioner's state

Rule 3.850 motion:[7]

> The Defendant contends that his conviction was based solely on the testimony of the victim, Zena Sutton, who had a motive to lie in order to extort money from the Defendant. The Defendant contends there were many inconsistencies in the victim's testimony as well as problems with the recovery of physical evidence in his case, which should have been argued in a motion for directed verdict at the end of the State's case. The Defendant contends his attorney never made such a motion.
>
> The Defendant's Motion is denied. Defense counsel, as the transcript reflects, argued a motion for judgment of acquittal with respect to counts one and two. Since the State had met its burden to show a prima facie case of the four charges in its case based upon the testimony of the victim and other witnesses, the court properly denied the Defendant's motion for judgment of acquittal. It is well settled that a trial judge should submit a case to a jury unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under law. <u>See State v. Brockman</u>, 827 So.2d 299, 303 (Fla. 1st DCA 2002), citing <u>Lynch v. State</u>, 293 So.2d 44, 45 (Fla. 1974). Here even if counsel had argued the inconsistencies in the victim's testimony on the collateral issues of where the property was recovered and how much money was allegedly taken by the Defendant, the court would have been required to deny the motion. The failure to preserve an argument that has no merit on appeal is not ineffective assistance of counsel.

(Dkt. #12, Ex. 10, pp. 246-48).

To the extent that Petitioner's claim, liberally construed, asserts a sufficiency of the evidence

claim, he is not entitled to relief. Florida courts evaluate a sufficiency of the evidence claim under

---

[7] The state court denied this claim in Petitioner's state Rule 3.850 motion without an evidentiary hearing (Dkt. #12, Ex. 10).

a legal standard identical to the standard used by federal courts in deciding federal due process challenges to the sufficiency of the evidence.  In evaluating such a claim, Florida courts assess whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt.  *Simmons v. State*, 934 So.2d 1100, 1111 (Fla. 2006); *Lynch v. State*, 293 So.2d 44 (Fla. 1974).  This standard is the same as the federal standard for evaluating a due process challenge based on the sufficiency of the evidence.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original).

To prove the crime of sexual battery with a deadly weapon charged in Count Three, the State must prove four elements beyond a reasonable doubt:

(1) the victim was 12 years of age or older;

(2) the defendant committed an act upon the victim in which the sexual organ of the defendant penetrated or had union with the mouth of the victim;

(3) the defendant in the process used or threatened to use a deadly weapon; and

(4) the act was done without the consent of the victim.

Fla. Std. Jury Inst. 11.2.

To prove the crime of sexual battery with a deadly weapon (vaginal union) charged in Count Four, the State must prove four elements beyond a reasonable doubt:

(1) the victim was 12 years of age or older;

(2) the defendant committed an act upon the victim in which the sexual organ of the defendant penetrated or had union with the vagina of the victim;

(3) the defendant in the process used or threatened to use a deadly weapon; and

(4) the act was done without the consent of the victim.

Fla. Std. Jury Inst. 11.2.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). In a challenge to a state criminal conviction brought pursuant to Section 2254, a petitioner is entitled to habeas relief on a claim of insufficient evidence "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. at 318-19 (*quoting Woodby v. INS*, 385 U.S. 276, 282 (1966) (emphasis in original)).

Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson v. Virginia*, 443 U.S. at n. 16. "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (*citing Jackson [v. Virginia]*, 443 U.S. at 316), the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson [v. Virginia]*, 443 U.S. at 326." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Johnson v. Alabama*, 256 F.3d at 1172. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *Johnson v. Alabama*, 256 F.3d at 1172 (*citing Jackson v. Virginia*, 443 U.S. at 326).

Among the witnesses presented at trial, the victim, Zena Sutton ("Sutton"), testified that she was born in 1954. She moved to Florida from Oregon with her boyfriend (Dkt. #12, Ex. 25, Vol. 2, p. 46). Sometime after arriving in Florida, Sutton left her boyfriend and went to stay with Stephen Perkins ("Perkins") at his trailer home. On the evening of October 14, 1999, Petitioner, Sutton and Perkins visited Garth and Cheryl Hubbard at their trailer located approximately one block away from Perkins's trailer. (Dkt. #12, Ex. 25, Vol. 2, p. 53-54). Eventually Sutton walked back to Perkins's trailer. When Sutton got to the trailer, she went into the bathroom and shut the door (Dkt. #12, Ex. 25, Vol. 2, p. 56). While Sutton was in the bathroom, Petitioner "came in, hit [her] in the face, had a knife in his hand [and] made [her] perform oral sex" (Dkt. #12, Ex. 25, Vol. 2, p. 58-59). Petitioner knocked Sutton's tooth out and held the knife to her throat. Petitioner cut off Sutton's bra with his knife and dragged her by her hair from the bathroom into the bedroom (Dkt. #12, Ex. 25, Vol. 2, p. 59, 63). Once in the bedroom, Petitioner forced himself on Sutton and "proceeded to penetrate" by putting his penis inside Sutton's vagina (Dkt. #12, Ex. 25, Vol. 2, p. 59, 64-65).

Perkins testified that on the evening of the crime, he returned to his trailer and saw Sutton run out of the bedroom "naked and crying hysterically" (Dkt. #12, Ex. 25, Vol. 3, p. 151). Perkins saw Petitioner exit the bedroom, zipping up his pants (Dkt. #12, Ex. 25, Vol. 3, pp. 153-54). Perkins observed blood on Sutton's face and that she was missing a tooth (Dkt. #12, Ex. 25, Vol. 3, pp. 151-52, 155). He found Sutton's tooth on the bathroom floor and later found her bra in the bathtub (Dkt. #12, Ex. 25, Vol. 3, pp. 156, 160-61). Perkins observed that the bra had been cut.

Dr. Dean Christensen, an emergency room physician at Sarasota Memorial Hospital, testified that he collected semen from Sutton's vaginal canal on the night of the crimes (Dkt. #12, Ex. 25, Vol. 3, pp. 215-16). Dr. Christensen observed multiple "fresh" bruises on Sutton's trunk and lower

extremities (Dkt. #12, Ex. 25, Vol. 3, p. 223). Dr. Christensen opined that Sutton had been assaulted based on her injuries (Dkt. #12, Ex. 25, Vol. 3, p. 225).

Deputy Rhonda DiFranco responded to the crime scene (Dkt. #12, Ex. 25, Vol. 4, p. 252). She observed that Sutton was missing a tooth and had bruises around her face and arms (Dkt. #12, Ex. 25, Vol. 4, p. 257). After receiving information from other officers that they had located Petitioner at a nearby mobile home park, Deputy DiFranco transported Sutton to the mobile home park where Sutton immediately identified Petitioner as the perpetrator (Dkt. #12, Ex. 25, Vol. 4, pp. 259-60).

Viewing the State's evidence of Petitioner's guilt in the light most favorable to the State and using the objective reasonableness test, a rational trier of fact could find Petitioner committed sexual battery and sexual battery with a deadly weapon, crimes for which he stands convicted. The state appellate court's affirmance[8] of Petitioner's convictions was neither an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.

To the extent that Petitioner claims ineffective assistance based on trial counsel's failure to move for judgment of acquittal on Counts One and Two, the claim warrants no relief because the record refutes the claim. After the State rested its case, defense counsel first moved for judgment of acquittal on the burglary charge (Count One),[9] asserting that the Information was fatally flawed (Dkt. #12, Ex. 25, Vol. 4, pp. 352-56). In his second argument for judgment of acquittal, defense

---

[8] The state appellate court affirmed Petitioner's convictions and sentences but remanded for correction of a scrivener's error (Dkt. #12, Ex. 7). The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

[9] The jury acquitted Petitioner on Count One (Dkt. #12, Ex. 1, p. 185).

counsel asserted that the burglary charge (Count One) and the aggravated battery charge (Count Two) amounted to a double jeopardy violation (Dkt. #12, Ex. 25, Vol. 4, pp. 357-60). The trial court denied the motions (Dkt. #12, Ex. 25, Vol. 4, pp. 356-57, 360). Thereafter the defense presented two witnesses and rested its case (Dkt. #12, Ex. 25, Vol. 5, pp. 369-414). Defense counsel renewed the motions for judgment of acquittal and the trial court again denied the motions (Dkt. #12, Ex. 25, Vol. 5, p. 416).

To the extent that Ground Two asserts an ineffective assistance claim for counsel's failure to move for judgment of acquittal on Counts Three and Four, Petitioner demonstrates no entitlement to relief. Florida law provides that a motion for judgment of acquittal will be granted "[i]f, at the close of the evidence for the state or at the close of all the evidence in the case, the court is of the opinion that the evidence is insufficient to warrant a conviction." Fla. R. Crim. P. 3.380(a). The State presented sufficient evidence to support the offenses for which Petitioner stands convicted. Trial counsel made no motion for judgment of acquittal on Counts Three and Four. Given the evidence presented at trial, defense counsel had no basis upon which to argue for judgment of acquittal on Counts Three and Four. Petitioner fails to show that counsel performed deficiently.

Even assuming, *arguendo*, that Petitioner satisfies the deficient performance prong of *Strickland*, he cannot demonstrate that if trial counsel had pursued a motion for judgment of acquittal on Counts Three and Four, the trial court would have granted the motion. Consequently, Petitioner cannot demonstrate prejudice under *Strickland*. Absent a demonstration of prejudice, Petitioner cannot prevail on this claim of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. at 697; *Hill v. Lockhart*, 474 U.S. at 59. The state court correctly applied *Strickland* in denying this claim in Petitioner's state Rule 3.850 motion. Consequently, Ground Two warrants no federal

habeas relief because Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts. *See* 28 U.S.C. § 2254(d)(1), (2).[10]

**Ground Three**

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to present evidence of the victim's history of prostitution. Petitioner contends that he told counsel that he had given the victim fifty dollars in return for sex on the night of the crimes. Petitioner argues that if the jury had heard evidence about the victim's prostitution, the jury would have concluded that the victim was untruthful and that Petitioner was not guilty of the charged offenses.

Petitioner presented this claim in his state Rule 3.850 motion. At the conclusion of the evidentiary hearing, the state judge made the following findings:

> The issue of his defense, since there was no other evidence, and I believe [defense counsel] did everything that he possibly could to find other evidence, I believe that it was a - - I believe factually [defense counsel] credibly [sic] that this came up late in the game, even though there was some evidence from [another witness]. I believe that the defendant was really waffling in his defense and this came up late in the game and [defense counsel] made every effort to get whatever information he could to prove that type of defense, and he wasn't able to find any, and the defendant was on the horns of a dilemma.
>
> . . .

---

[10] Petitioner states in his federal habeas petition that "[t]he Fifth Amendment (Equal Protection of the Law) of the United States Constitution mandates that all persons who are faced with criminal charges shall be treated equally" (Dkt. #1, p. 17). To the extent he asserts an equal protection claim, Petitioner neither presents factual or legal support for the claim, nor specifies how he believes trial counsel or the state court violated his right to equal protection. These bare, unsubstantiated allegations fail to state a viable federal constitutional claim warranting federal habeas relief. *See GJR Inv., Inc. v. Escambia*, 132 F.3d 1359, 1367-68 (11th Cir. 1998) ("Bare allegations that 'other[s],' even 'all other[s],' were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' [people] were situated similarly to the [complainant].").

There was never anything else raised and I believe that [defense counsel]'s performance was not deficient in any way and I deny the application for post conviction relief.

(Dkt. #12, Ex. 14, pp. 435-36 ).

The record supports the state court's denial of this claim. At the evidentiary hearing, counsel testified that Petitioner denied having sex with the victim:

> Bruce [Allison] brought up the notion of engaging in sex with this woman through prostitution just before we were going to trial. Now, like I said, there were three trial dates. I don't know which date he would have brought it up, but the whole time prior to him bringing it up, and I would say for eight, nine, ten, 11, 12 months, it was always there was never any sexual contact with this woman, and that began, as I began in my testimony, the day after he was arrested when [defense counsel's investigator] went over and spoke with him.

> These are [the investigator's] investigative handwritten notes and essentially what he says is, [the investigator] writes in the very first paragraph in a narrative portion, second, third sentence, [t]he defendant states that he never had sex with the victim. The defendant denies holding a knife to the victim's throat.

> So the very, right out of the box to my investigator and I have no reason to believe that she miswrote [sic] this or misinterpreted what he said because he said he never had sex with her. And all the way through my representation of Bruce, it was always never [sic] had sex with this girl. In fact, he was abhorred by her. He thought that she was the ugliest, rottenest thing that ever walked the planet, and to even bring that up to him was an insult. He never had sex with this woman.

> Until one day as we're getting ready for trial he brought that up to me and I was floored because, I said Bruce, this is the first time you've ever mentioned to me you had sex with the girl. You always said you never had sex with her.

(Dkt. #12, Ex. 14, pp. 419-20).

On cross-examination at the evidentiary hearing, defense counsel testified that Petitioner never mentioned anything to him about prostitution until just before trial:

It's like etched in my mind and the reason that it's etched in my mind is because he came up with this prostitution thing at the last minute. When I say last minute, I use that very loosely because it could have been one month, it could have been two months, it even could have been three months before trial. But when I went over there this day - - because he used to say she was dirty and filthy. He would never have any - - because I used to question him, did you have sex with her? No. What, are you kidding me? He didn't - - it was like she was scum and he wouldn't touch her. I was insulting him. So when he brought that to me, I was floored. I couldn't believe it.

So I'm like, wow, this is interesting. Did you really have sex with her? Yes, I did. It was for money and that's why screamed because she didn't want Stevie [Perkins] to know that she was having sex with me in there, and that's why I walked out the back door nonchalantly like nothing happened, and she was screaming because she didn't want anyone to know that she was having sex with me for money. So I was floored when he brought that up.

(Dkt. #12, Ex. 14, pp. 428, 431).

Petitioner fails to show that counsel performed deficiently. Defense counsel testified that he had no evidence that the victim had a criminal history for prostitution and that he spoke with all the possible witnesses suggested by Petitioner regarding this issue (Dkt. #12, Ex. 14, pp. 421-22). The state court reasonably concluded from the evidence presented at the evidentiary hearing that defense counsel endeavored, albeit unsuccessfully, to gather information to prove that the victim had a history of prostitution as Petitioner suggests.

Even assuming, *arguendo*, that counsel's performance was deficient, Petitioner fails to show that if counsel had presented evidence of the victim's alleged history of prostitution, the jury would have acquitted him. Petitioner fails to meet *Strickland*'s prejudice requirement. *See Strickland v. Washington*, 466 U.S. at 691-92. Absent a demonstration of prejudice, Petitioner cannot prevail on this claim of ineffective assistance of counsel. *See Heath v. Jones*, 941 F.3d at 1130; *Chandler v. United States*, 218 F.3d at 1312-14. The state court correctly applied *Strickland's* standard.

Consequently, Petitioner fails to meet his burden of proving that the state court's denial of this claim

of ineffective assistance is an unreasonable application of controlling Supreme Court precedent or

an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1), (2).

**Ground Four**

Petitioner contends that he is actually innocent of the crimes for which he stands convicted.

The state court rejected this claim of Petitioner's state Rule 3.850 motion:[11]

> The Defendant contends, based upon the lack of physical evidence and the victim's alleged motive to extort money from the Defendant, that he is actually innocent of the crimes he was charged with and convicted of by the jury. The Defendant points to a number of alleged facts and circumstances concerning his case in arguing that ultimately there was reasonable doubt and the "uneducated" jury did not find that he was not guilty of all charges.
>
> The Defendant's Motion is denied. The Defendant's attempt at arguing that he is actually innocent of the crimes is insufficient because the Defendant fails to support his claim with new reliable evidence that was not presented at trial. See Schlup v. Delo, 513 U.S. 298 (1995). The Defendant's Motion merely re-argues the alleged inconsistencies and other favorable facts toward acquittal that would have been argued at trial and, as a result, the Defendant's Motion is also denied pursuant to Fla. R. Crim. P. 3.850(c) as raising grounds that could have been or should have been raised on direct appeal. Further, as pointed out above, much of what the Defendant points to as indicating his innocence deals with collateral matters that were resolved against the Defendant by the jury as the finder of facts in the case.

(Dkt. #12, Ex. 10, pp. 239-40). Petitioner presents no entitlement to relief.

"To establish actual innocence, [a habeas petitioner] must demonstrate that . . . 'it is more

likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 523

U.S. 614, 623 (1998) (*quoting Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). *See also House v. Bell*,

547 U.S. 518, 537 (2006). "Actual innocence" means factual innocence rather than mere legal

---

[11] The state court denied this claim in Petitioner's state Rule 3.850 motion without an evidentiary hearing (Dkt. #12, Ex. 10).

innocence. *Bousley v. United States*, 523 U.S. at 623; *Johnson v. Alabama*, 256 F.3d at 1171. "To be credible, [a claim of actual innocence] requires [a] petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324.

The state court's denial of this claim is consistent with the clearly established federal law articulated in *Schlup*. *See* 28 U.S.C. § 2254(d)(1). Given Petitioner's failure to support his claim with new reliable evidence that was not presented at trial, the state court's denial was objectively reasonable. *See* 28 U.S.C. § 2254(d)(2). As in his state post-conviction motion, Petitioner presents nothing beyond his self-serving allegations to support this claim in his federal habeas petition. Petitioner fails to provide any new evidence to substantiate his claim and fails to establish that he is factually innocent of aggravated battery, sexual battery or sexual battery with a deadly weapon. Accordingly, Ground Four warrants no federal habeas relief.

**Ground Five**

Petitioner contends that the trial court committed fundamental error by failing to swear-in the venire before *voir dire*.[12] The state court rejected this claim on direct appeal (Dkt. #12, Ex. 7).

To the extent that Petitioner's claim challenges the trial court's application of state law and state procedural rules, the claim warrants no relief. Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990). A state's

---

[12] Rule 3.300, Florida Rules of Criminal Procedure, states that "the prospective jurors shall be sworn collectively or individually, as the court may decide." Fla. R. Crim. P. 3.300(a).

interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question is presented. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Whether the trial court failed to follow state procedure is a matter of state law and is not cognizable on federal habeas corpus review.

To the extent that Petitioner's claim, liberally construed, asserts a federal due process claim, the claim warrants no relief. Petitioner neither offers factual or legal support for his claim nor cites to a portion of the record to demonstrate the alleged trial court error. The record fails to indicate whether the venire was sworn before *voir dire* (Dkt.# 12, Ex. 25, Vol. 1). However, in Florida, "it is a common practice to obtain oaths from the venire outside the courtroom." *Martin v. State*, 898 So.2d 1036, 1037 (Fla. 5th DCA 2005); *Hayes v. State*, 855 So.2d 144 (Fla. 4th DCA 2003). In light of this practice and absent evidence to affirmatively establish his allegation, Petitioner's claim that the trial court failed to place the venire under oath is speculative. Trial counsel did not object at trial to a failure to give the oath, resulting in a waiver of the objection. *Bolin v. State*, 869 So.2d 1196, 1202 (Fla. 2004) ("Although the record does not indicate whether the venire was sworn, defense counsel did not object at any point during the trial to a failure to give the oath to the venire and thus waived any objection."). "Where, as here, there is simply no record one way or the other [that the venire was unsworn], no error, let alone fundamental error, has been shown." *Smith v. State*, 866 So.2d 51, 64 (Fla. 2004). *See also United States v. Pinero*, 948 F.2d 698, 700 (11th Cir. 1991) ("The mere absence of an affirmative statement in the record [that the jury was not sworn] . . . is not enough to establish that the jury was not in fact sworn.").

Petitioner fails to establish fundamental error. Accordingly, Ground Five warrants no federal habeas relief.

It is therefore ORDERED AND ADJUDGED:

1.      Petitioner's petition for the writ of habeas corpus (Dkt. #1) is DENIED.

2.      The Clerk is directed to deny any pending motions as moot, enter judgment for Respondent and close this case.

**DONE** and **ORDERED** in Tampa, Florida on *April 30th*, 2008.

JAMES D. WHITTEMORE
UNITED STATES DISTRICT JUDGE

copies to: Petitioner, counsel of record